UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERREN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-02262-JPH-MJD |
| | ) |
| FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

Plaintiff Jerren Jones alleges in his Fourth Amended Complaint that Defendant Federal Motor Carrier Safety Administration ("FMCSA") failed to timely remove false information about him from its Commercial Driver's License Information System ("CDLIS"). The FMCSA moves to dismiss Count II, which is Mr. Jones's Privacy Act claim. Dkt. [41]. For the reasons below, that motion is **GRANTED in part** and **DENIED in part**.

## I.
## Facts and Background

Because the FMCSA moves for dismissal under Rule 12(b)(1) and 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *see Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

In July 2022, police stopped Mr. Jones while he was operating a commercial motor vehicle in White County, Indiana. Dkt. 40 at 2 ¶ 6. He

1

faced criminal charges stemming from the traffic stop, but in December 2022 the State of Indiana moved to nolle prosequi the case and the White Superior Court granted that motion. *Id.* at 2 ¶ 9.

From that traffic stop, the FMCSA added three violations to Mr. Jones's commercial driving record in its CDLIS: (1) driving under the influence; (2) operating a commercial vehicle without proof of periodic inspection; and (3) falsely reporting his on-duty status. *Id.* at 2 ¶ 7. Mr. Jones disputed the violations through FMCSA's DataQs dispute resolution system, which allows drivers to challenge the information maintained and disseminated by the agency. *Id.* He submitted evidence, including the State's motion to nolle prosequi the criminal case, the state court's order on that motion, and a March 2023 letter from an attorney summarizing the procedural history of the state court criminal case. *Id.*

On September 6, 2023, Mr. Jones submitted a formal written request to the FMCSA demanding that it immediately remove the three violations from his driving record. *Id.* at 3–4 ¶ 18(a). On September 25, FMCSA declined Mr. Jones's request, stating that it had reviewed his request, investigated his driving record, and determined that the violations were not associated with an adjudicated citation or recorded in error. *Id.* at 3–4 ¶¶ 10–12, 18(b). Mr. Jones submitted a formal appeal letter to the FMCSA on October 10, requesting that the agency reconsider its decision and grant access to additional information related to his case. *Id.* at 4 ¶ 18(c).

On April 26, 2024, Mr. Jones received a response in DataQs indicating that the FMCSA removed from his record the driving under the influence violation.  *Id.* at 3 ¶ 14, 4 ¶ 18(d).  On May 21, Mr. Jones received another response in DataQs where the FMCSA declined to remove the remaining two violations.  *Id.* at 4 ¶ 18(e).  On June 10, Mr. Jones received an additional response in DataQs stating that the violation for driving under the influence "was removed on 4/26/24 and will show up as removed when FMCSA runs their next SMS data.  The violation does NOT show up on our report."  *Id.* at 4 ¶ 18(f).

On July 24, Mr. Jones "submitted a final request to FMCSA headquarters to remove the specified violations from [his] Pre-Employment Screening Program (PSP) record."  *Id.* at 4 ¶ 18(g).  On August 5, Mr. Jones received a letter from the PSP System Manager, who confirmed that Mr. Jones's request would be processed in accordance with the Department of Transportation's Privacy Act regulations.  *Id.* at 4–5 ¶ 18(h).

Mr. Jones initiated this case in December 2023 and filed his Fourth Amended Complaint in December 2024.  Dkts. 1, 40.  Count I seeks judicial review of the FMCSA's actions under the Administrative Procedure Act, 5 U.S.C. § 702, and Count II alleges the FMCSA violated the Privacy Act, 5 U.S.C. § 552a.  *Id.* at 5–6.  Mr. Jones seeks monetary damages and injunctive relief.  *Id.* at 6.  The FMCSA moves to dismiss Count II under Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  Dkt. 41.

## II.
## Motion to Dismiss Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Burwell*, 770 F.3d at 588–89. To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

Under both 12(b)(1) and 12(b)(6), the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616; *see Burwell*, 770 F.3d at 588–89.

# III.
# Analysis

"[I]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies," the Privacy Act "regulate[s] the collection, maintenance, use, and dissemination of information by such agencies." *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896). Mr. Jones alleges that the FMCSA violated the Privacy Act by "willfully and intentionally" failing to maintain accurate records by keeping "false violations" on his driving record despite acknowledging "clear exculpatory evidence." Dkt. 40 at 5–6 ¶¶ 26–32. He seeks monetary damages and injunctive relief in the form of an order compelling the FMCSA to amend his records on the CDLIS. *Id.* at 6. The FMCSA argues that Mr. Jones's Privacy Act claim must be dismissed for failure to exhaust administrative remedies and because Mr. Jones fails to plausibly state a claim for monetary damages. Dkt. 42.

### A. Exhaustion of administrative remedies

"Before an individual may bring a Privacy Act suit seeking amendment of a record maintained by an agency, he must first have exhausted his administrative remedies for having the improper material removed from the record." *Diliberti v. United States*, 817 F.2d 1259, 1260 (7th Cir. 1987) (citing 5 U.S.C. § 552a(g)(1)). To properly exhaust, "the plaintiff must request the agency to amend the relevant record, and if the agency refuses to amend the record, he must seek agency review of the refusal." *Id.* (internal citations omitted) (citing § 552a(d)(2), (d)(3)). The Privacy Act's "administrative remedies

are a jurisdictional prerequisite to a district court's review." *Kursar v. Transp. Sec. Admin.*, 581 F. Supp. 2d 7, 18 (D.D.C. 2008); *Diliberti*, 817 F.2d at 1260–61 (suggesting Privacy Act exhaustion is a jurisdictional requirement).

The FMCSA is an agency within the Department of Transportation, 49 U.S.C. § 113, and the Department of Transportation's regulations implementing the Privacy Act require that "[a]ny person who desires to have a record pertaining to that person corrected shall submit a written request detailing the correction and the reasons the record should be so corrected." 49 C.F.R. § 10.41. Any such request "shall be submitted to the System Manager." *Id.* If the requester is informed the amendment will not be made, he "may apply to the Administrator concerned . . . for review of that decision." *Id.* § 10.51(b)(2). However, a determination that a record will not be amended "is not administratively final for the purposes of judicial review unless it was made by the Administrator concerned or his or her delegatee." *Id.* § 10.51(b). "Upon a determination that an appeal will be denied, the requester is informed in writing" that, among other things, "the determination may be appealed" in federal court. *Id.*

Here, the FMCSA argues that Mr. Jones did not exhaust administrative remedies because when he initiated this suit in December 2023, he had not received a final administrative determination under § 10.51(b). Dkt. 42 at 4–5. According to the FMCSA, Mr. Jones's own allegations and admissions demonstrate that he failed to exhaust. First, in July 2024 he "submitted a final request to FMCSA headquarters to remove the specified violations from [his]

6

Pre-Employment Screening Program (PSP) record." *Id.* at 4 (quoting dkt. 40 at 4 ¶ 18(g)). And in August 2024, he "received an acknowledgment" from FMCSA's PSP System Manager "confirming that [his] request would be processed in accordance with DOT's Privacy Act regulations." *Id.* (quoting dkt. 40 at 4 ¶ 18(h)).

Mr. Jones responds[1] that the May 2024 and June 2024 responses he received in DataQs constitute a "final determination" from FMCSA that allowed him to sue. Dkt. 45 at 2. He also argues that his July 2024 letter and FMCSA's response in August 2024 "pertained to a separate request regarding [his] Pre-Employment Screening Program (PSP) record," which does not affect the exhaustion completed in May and June. *Id.*

Despite the lengthy history of Mr. Jones's communications with the FMCSA, he has not established that he exhausted administrative remedies as required. His claim that the May and June 2024 DataQs responses constitute the FMCSA's final determination is undermined by his concession that in October 2024, the agency removed one of the remaining violations from his record. *See* dkt. 45 at 2. The FMCSA's continued evaluation of the contested violations months after the May and June 2024 DataQs responses demonstrates that those responses were not a "final determination" as required for exhaustion.

---

[1] The FMCSA argues in its reply brief that the Court should not consider Mr. Jones's response brief because it was untimely under the Local Rules. Dkt. 46 at 1–2. Mr. Jones responds that he mailed his response two days before the deadline. Dkts. 47, 48. In this situation, the Court exercises its discretion to consider Mr. Jones's response.

7

This conclusion is further supported by Mr. Jones's failure to allege that the May and June 2024 DataQs responses informed him that those decisions could be appealed in federal court.  *See* 49 C.F.R. § 10.51(b); *see Diliberti*, 817 F.2d at 1261 ("[T]he individual must be notified of his right to seek judicial review of the agency's determination.").  And nowhere in Mr. Jones's operative complaint does he allege that, outside of its DataQs responses, the FMCSA notified him that the agency had completed its review such that Mr. Jones could challenge that review in federal court.  Nor does he allege that the FMCSA failed to provide such a notification.  Accordingly, Mr. Jones has not established that he exhausted administrative remedies in seeking to compel the FMCSA to amend his driving record.

The FMCSA argues that this requires dismissal of Mr. Jones's entire Privacy Act claim for lack of subject-matter jurisdiction.  *See* dkt. 42 at 4–5 (FMCSA arguing "this *suit* should be dismissed for lack of subject-matter jurisdiction" (emphasis added)).  Recall that Mr. Jones seeks both injunctive relief and monetary damages for the FMCSA's alleged Privacy Act violations. Dkt. 40 at 6.  *Diliberti* confirms that the Privacy Act's exhaustion requirement applies to claims seeking the injunctive relief of compelling an agency to amend a record.  817 F.2d at 1260 (discussing 5 U.S.C. § 552a(d)(2), (d)(3), (g)(1)). Because Mr. Jones has not established that he exhausted administrative remedies before filing suit, his Privacy Act claim for injunctive relief must be dismissed for lack of subject-matter jurisdiction.  *See Burwell*, 770 F.3d at 588–89.

The applicable regulations' exhaustion requirement, however, only addresses claims for injunctive relief. And *Diliberti* did not decide whether the exhaustion requirement also applies to claims for monetary damages. 817 F.2d at 1261. Other circuits have held that plaintiffs need not exhaust administrative remedies before bringing a claim for monetary damages under the Privacy Act. *See, e.g.*, *Nagel v. U.S. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 n.2 (D.C. Cir. 1984) (cited in *Diliberti*, 817 F.2d at 1261); *Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir. 1986) (cited in *Diliberti*, 817 F.2d at 1261); *see also* 15 Fed. Proc., L. Ed. § 38:538 (2025) ("Exhaustion of administrative remedies is not required where an individual seeks damages under the Privacy Act . . . ." (citing *M.K. v. Tenet*, 99 F. Supp. 2d 12 (D.D.C. 2000)). And the FMCSA does not cite binding precedent holding otherwise. So even though Mr. Jones failed to exhaust administrative remedies before filing suit, the Court finds that his claim for monetary damages is not barred by that failure.

### B. Willful and intentional Privacy Act violation

The FMCSA next argues that the Privacy Act claim must be dismissed because Mr. Jones does not allege that its actions were willful and intentional. An individual may sue an agency for monetary damages under the Privacy Act when the agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that

9

may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).  A plaintiff may recover monetary damages only if a "court determines that the agency acted in a manner which was intentional or willful."  5 U.S.C. § 552a(g)(4).  To satisfy that standard, the agency's conduct must have been "greater than gross negligence," and instead must have exhibited "reckless behavior and/or knowing violations" of the Privacy Act. *Moskiewicz v. U.S. Dep't of Agric.*, 791 F.2d 561, 564 (7th Cir. 1986).

Here, Mr. Jones alleges that the FMCSA willfully and intentionally violated the Privacy Act by:

- "[m]aintaining false violations on [his] record despite clear exculpatory evidence,"
- "[r]efusing to remove violations even after acknowledging the lack of supporting evidence, as evidenced by the removal of the DUI violation,"
- "[d]eliberately ignoring official court documents proving the dismissal of charges related to the alleged violations," and
- "[k]nowingly disseminating false information about [him] to potential employers, causing direct harm to [his] professional opportunities."

Dkt. 40 at 6 ¶ 30.

The FMCSA argues that Mr. Jones's allegations do not plausibly state a claim for a willful and intentional Privacy Act violation because the agency

10

"considered the evidence" that Mr. Jones submitted, and it eventually "decided to remove one of the violations from his record."  Dkt. 42 at 6.  The agency also argues that its decision not to remove the other two violations[2] demonstrates only "a dispute over the weight of the evidence" that does not constitute willful or intentional misconduct.  *Id.*  Mr. Jones responds that even though he provided evidence that the state criminal case underlying his driving record violations had been dismissed, the FMCSA maintained false violations on his record for months "until forced to remove them through litigation."  Dkt. 45 at 3.  And he argues that the FMCSA's subsequent removal of contested violations means the agency "effectively admit[ted]" the violations "were incorrectly maintained," and the FMCSA "has not provided any alternative evidence supporting the remaining violation."  *Id.*

Drawing all reasonable inferences in Mr. Jones's favor, he has sufficiently pleaded facts to support his claim that the FMCSA willfully violated its duty under the Privacy Act to maintain accurate records.  For example, Mr. Jones alleges that he put the FMCSA on notice that the criminal case underlying the DUI violation had been dismissed in December 2022, so the violation on his driving record was inaccurate.  Dkt. 40 at 2 ¶ 9.  He further alleges that he repeatedly submitted requests to the FMCSA to remove that violation from his record, including DataQs submissions and letters sent to the FMCSA in September and October 2023.  *Id.* at 3–4 ¶ 10, 14, 18(a)-(d).  Despite

---

[2] Mr. Jones's response brief suggests that the FMCSA removed the periodic inspection violation from his record in October 2024.  Dkt. 45 at 3.

11

those requests and the lack of supporting evidence—such as a toxicology report—the FMCSA did not remove the DUI violation from his driving record until April 2024. *Id.* at 2 ¶ 14, 4 ¶ 18(d), 6 ¶ 30. That is enough for the Court to reasonably infer that the FMCSA acted willfully here. *See Makowski v. United States*, 27 F. Supp. 3d 901, 913 (N.D. Ill. 2014) (holding plaintiff plausibly alleged agency willfully violated Privacy Act when he put agency on notice that the record of his citizenship status was inaccurate and could lead to adverse immigration enforcement against him, yet agency did not update its records).

*Moskiewicz*, which the FMCSA relies on, does not support dismissal. There, the Seventh Circuit reviewed both sides' summary judgment evidence in evaluating the "legitimate disagreements between the parties on the data that should be used" to evaluate plaintiff's emergency loan application. 791 F.2d at 565. *Moskiewicz* shows that the "proper dispositive motion" for this inquiry is a summary judgment motion, not a motion to dismiss. *Alexander v. Fed. Bureau of Investigation*, Nos. CIV 96–2123, CIV 97–1288, 1998 WL 1049007, at *3 (D.D.C. Dec. 7, 1998) (citing *Moskiewicz*, 791 F.2d at 564).

So taken all together, Mr. Jones has plausibly alleged that the FMCSA willfully violated its Privacy Act duty to maintain accurate records. "Nothing more is required to comply with Rule 8(a)(2), nor meet the plausibility standard articulated by *Twombly* and its progeny." *Bilek*, 8 F.4th at 588; *Graham*, 8 F.4th at 627 ("A claim must be plausible, but it need not supply the specifics

12

required at the summary judgment stage."). Therefore, FMCSA's motion to dismiss the damages portion of Mr. Jones's Privacy Act claim is **DENIED**.

## IV. Conclusion

Defendant's motion to dismiss Count II of the Fourth Amended Complaint is **GRANTED in part** and **DENIED in part**. Dkt. [41]. It is **GRANTED** to the extent that Mr. Jones's claim for injunctive relief is dismissed without prejudice and **DENIED** to the extent that his claim for money damages proceeds.

Mr. Jones's motions to file a surreply, dkts. [47] and [48], are **GRANTED** to the extent the Court considered his proposed surreply in evaluating whether to consider his response brief.

Finally, Mr. Jones recently filed a motion for summary judgment while the motion to dismiss at issue here was pending. Dkt. [53]. That motion is **denied without prejudice** because the pleadings are not closed yet. Magistrate Judge Dinsmore is requested to set an appropriate discovery and briefing schedule for the remainder of this case.

**SO ORDERED.**

Date: 5/16/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:
JERREN JONES
6565 N. MacArthur Blvd., Suite 225-120
Irving, TX 75039
jerrenjones81@gmail.com

All electronically registered counsel

13